# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

| | |
|---|---|
| CONCORDIA PHARMACEUTICALS INC. S.À.R.L., CONCORDIA INTERNATIONAL CORP., and CONCORDIA PHARMACEUTICALS (US) INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> LAZARUS PHARMACEUTICALS, INC., and CAMERON PHARMACEUTICALS LLC, <br><br> *Defendants*. | 6-18-cv-1658-HMH <br><br> Case No. ~~XX-XXX-9999X~~ <br><br><br> **COMPLAINT** <br> **(JURY TRIAL REQUESTED)** |

Plaintiffs Concordia Pharmaceuticals Inc., S.À.R.L. ("Concordia"), Concordia International Corp. ("Concordia International"), and Concordia Pharmaceuticals (US) Inc. ("Concordia US"), complaining of Lazarus Pharmaceuticals, Inc. ("Lazarus") and Cameron Pharmaceuticals LLC ("Cameron" and collectively "Defendants") allege and state the following:

## NATURE AND BASIS OF ACTION

1.      This Action arises out of Defendants' manufacture of a pharmaceutical, PBA (defined below) elixir product, and the knowing and willful false and/or misleading advertising, marketing, sale, and/or promotion of the pharmaceutical, PBA elixir product. Defendants' actions, with respect to their PBA elixir product, constitute false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); contributory false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); federal unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A);

unfair competition under common law; unjust enrichment in violation of South Carolina common law; and tortious interference in violation of South Carolina common law. Defendants' theft, misappropriation, and/or use of confidential information owned by Plaintiffs in aid of its manufacture, sale, and promotion of its PBA elixir product are in violation of 18 U.S.C. § 1836 *et. seq.,* the Defend Trade Secrets Act of 2016.

2.    Plaintiffs seek injunctive relief, actual damages, punitive damages, corrective advertising, and recover of its costs and reasonable attorneys' fees incurred in connection with this action.

## PARTIES

3.    Plaintiff Concordia is a corporation formed under the laws of the Grand-Duchy of Luxembourg with a branch office in Barbados.

4.    Plaintiff Concordia International is a corporation formed under the laws of the Province of Ontario, Canada with its principal place of business located in Oakville, Ontario.

5.    Plaintiff Concordia US is a Delaware Corporation.

6.    Upon information and belief, Lazarus is a corporation formed under the laws of Barbados.

7.    Upon information and belief, Cameron is a Kentucky Corporation with its principal place of business located in Louisville, Kentucky.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over this action because, *inter alia*, (a) complete diversity of citizenship exists between the parties under the provisions of 28 U.S.C. § 1332 and (b) the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      The Court also has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338 in that this action arises under the laws of the United States, specifically 18 U.S.C. § 1836 *et. seq.* (the Defend Trade Secrets Act of 2016) and 15 U.S.C. § 1125 *et. seq.* (the Lanham Act). The Court also has supplemental jurisdiction over Plaintiffs' state and common law claims pursuant to 28 U.S.C. § 1367, which form part of the same case or controversy.

10.     This Court has personal jurisdiction over Defendants' because, upon information and belief, Defendants' are directing the marketing of their PBA elixir products throughout the United States from within the District of South Carolina, including the conduct of Christopher Blake Kelley ("Kelley"), a resident of Greenville County, South Carolina, who caused Defendants' PBA elixir products to be listed in Drug Databases, which are a specialized marketing channel for prescription pharmaceutical products in the District of South Carolina and throughout the United States.

11.     This Court has personal jurisdiction over Cameron because Cameron has listed its PBA elixir for sale in online databases that are used by purchasers of PBA pharmaceuticals in this District, and, accordingly, Cameron has purposefully directed its business activities toward this District. In addition, Cameron has caused harm to Plaintiffs in this District. Through such conduct, Cameron has purposefully availed itself of the privileges of conducting business in this District, and, when engaging in such conduct, it was reasonably foreseeable that Cameron would be subjected to this Court's jurisdiction.

12.     This Court has personal jurisdiction over Lazarus because Lazarus has listed its elixir product for sale in online databases that are used by purchasers of PBA pharmaceuticals in this District, and, accordingly, Lazarus has purposefully directed its business activities toward

this District.  In addition, Lazarus has caused harm to Plaintiffs in this District. Through such conduct, Lazarus has purposefully availed itself of the privileges of conducting business in this District, and, when engaging in such conduct, it was reasonably foreseeable that Lazarus would be subjected to this Court's jurisdiction.

13.    Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391 because all Defendants are subject to the personal jurisdiction of this Court. Venue is also proper in this division because a substantial part of the events giving rise to the claims in this action occurred in the District of South Carolina, including, upon information and belief, Defendants' marketing of their PBA elixir products from within the District of South Carolina, and the conduct of Kelley from within the District of South Carolina, who caused Defendants' PBA elixir products to be listed in Drug Databases, which are a specialized marketing channel for prescription pharmaceutical products in the District of South Carolina and throughout the United States.

## FACTUAL ALLEGATIONS

14.    Concordia is a specialty pharmaceutical company focused on generic and legacy pharmaceutical products. For nearly 80 years, Concordia's Donnatal® brand of pharmaceutical products has helped improve the lives of individuals suffering from irritable bowel syndrome (IBS), a condition characterized by abdominal pain, bloating, and irregular diarrhea or constipation.

15.    The Donnatal® pharmaceutical products are a proprietary combination medicine used as adjunctive therapy in the treatment of IBS, as well as acute enterocolitis. Because Donnatal® pharmaceutical products require use under the supervision of a healthcare provider, they are available by prescription only.

16.     The active ingredients in the Donnatal® pharmaceutical products are a combination of phenobarbital and belladonna alkaloids ("PBA").

17.     Concordia distributes and markets the Donnatal® pharmaceutical products in two unique formulations: (1) immediate release Donnatal® Tablets and (2) fast-acting Donnatal® Elixir ("Donnatal Elixir"), which is available in either grape or mint flavor.

18.     Defendants are seeking to exploit the success of Donnatal Elixir by manufacturing and marketing a "knock-off" PBA elixir while aided by intellectual property wrongfully obtained from Plaintiffs. Defendants falsely represent that their PBA elixir is available and functions as a generic substitute for Donnatal Elixir.

## CONCORDIA'S DONNATAL PRODUCTS

19.     The Donnatal® pharmaceutical products were first introduced in the market by A.H. Robins Company ("Robins") in 1936. Concordia is the successor-in-interest to Robins.

20.     In 1962, when Congress amended the Federal Food, Drug and Cosmetic Act ("FD&C Act"), the Food and Drug Administration ("FDA") was required to conduct a retrospective evaluation of drugs that had previously been approved under the FD&C Act between its enactment in 1938 and 1962. Donnatal® was one of more than 3,400 drugs affected by this amendment. 21 U.S.C. § 301 *et seq.*

21.     In the 1970s, the FDA began a process of evaluating the safety and efficacy of PBA drug products under the Drug Efficacy Study Implementation ("DESI") review program. On June 20, 1978, the FDA required any drugs that were involved in the review process to obtain an approved New Drug Application ("NDA") or Abbreviated New Drug Application ("ANDA") to remain on the market. 43 Fed. Reg. 26,490 (June 20, 1978).

22.     On December 30, 1980, Plaintiff's predecessor, Robins, obtained conditional

approval ANDAs for its Donnatal® Tablets (ANDA 88-676) and Donnatal® Elixir (ANDA 86-661). Conditionally approved ANDAs have the same status as safety-only NDAs that had been approved prior to the 1962 Amendments.Drug products manufactured under such a conditionally approved ANDA can be legally marketed until the FDA resolves questions about their effectiveness under the FD&C Act.

23.     On May 6, 1983, the FDA published in the Federal Register a notice of an opportunity for hearing ("NOOH") regarding the regulatory status of PBA drug products, including Donnatal®. Under the FD&C Act, FDA requires the holders of approved NDAs or those alleging such approvals to submit clinical evidence within 60 days of the NOOH showing that genuine and material issues of fact exist about the effectiveness of the drug that require an administrative hearing for resolution.

24.     In response to the NOOH, Robins submitted substantial clinical evidence that raised genuine and material issues supporting the effectiveness of Donnatal®.

25.     Under the NOOH process, only those companies that actively participated in this hearing process and submitted clinical evidence were permitted to legally market their PBA drug products. Plaintiff's Donnatal® products have been under this NOOH since 1983, and thus have been allowed to continue to remain on the market pending final resolution of the hearing process. The hearing process for PBA products has not yet been completed.

26.     In July 2011, in response to a notice from the FDA seeking clarification of the ownership of Donnatal®, Concordia's predecessor-in-interest, PBM Pharmaceuticals, Inc., submitted information demonstrating that it is the successor-in-interest to Robins, as well as additional substantial clinical evidence and data supporting the effectiveness of the Donnatal® products. This submission further clarified Concordia's legal basis for marketing its products.

27.     Upon information and belief, Concordia is the only company that continues to Participate in the FDA DESI review process for PBA products.

28.     In September 2011, FDA established a Compliance Policy Guide confirming that any drug product coming to market for the first time after September 19, 2011 alleging any legal status under DESI review was illegal and subject to immediate legal action by the FDA.

29.     Accordingly, upon information and belief, Concordia is the only company with a drug approval letter (ANDA 86-661) for its Donnatal® Elixir that is legally permitted to market PBA products. A copy of Plaintiffs' conditional drug approval letter is attached as Exhibit 1.

30.     The market perception of a "generic" drug is a drug that is "therapeutically equivalent" to a branded drug. The market perceives "therapeutically equivalent" drugs to be both "pharmaceutically equivalent" and demonstrated to be "bioequivalent" (that is, the rate and extent to which the active ingredient or active moiety is absorbed from a drug product and becomes available at the site of drug action) to the branded drug.

31.     The market believes a drug manufacturer or distributor has submitted an application to the FDA summarizing the testing it has performed to establish therapeutic equivalence between the referenced or branded drug and the generic version of the drug and received FDA approval for substitution of the generic version for the reference or branded drug.

32.     In connection with their business, Plaintiffs have developed or generated confidential, proprietary, and trade secret information relating to Plaintiffs' business and pharmaceutical products, as applicable, including, but not limited to, product formulas, manufacturing processes, financial data, and customer information.

33.     Plaintiffs maintain contractual relationships with pharmaceutical manufacturers, distributors, wholesalers, and/or suppliers in order to make and sell Donnatal® Elixir. These

contractual relationships result in economic benefits to Plaintiffs, and will continue to do so in the future. These contractual relationships are standard for the industry.

34.    Plaintiffs' confidential, proprietary, and trade secret information would be extremely valuable to a competitor of Plaintiffs or anyone attempting to manufacture, market, or otherwise sell the same or similar pharmaceuticals sold by Plaintiffs. A competitor could use the confidential, proprietary, and trade secret information developed by Plaintiffs to manufacture a "knock-off" PBA elixir and compete in Plaintiffs' market in a fraction of the time without incurring the time and expense invested by Plaintiffs to develop their confidential, proprietary, and trade secret information, including the specific process of manufacturing a PBA elixir which requires extensive know-how to develop independently.

35.    Plaintiffs have taken various steps to protect their confidential, proprietary, and trade secret information, including: (1) using network firewalls, password protection, and security credentials to prevent unauthorized access to Plaintiffs' servers, (2) limiting employees' access to information to that which is necessary to fulfill their job functions, (3) revoking employee authorization when they leave employment with Plaintiffs, (4) controlling physical access to Plaintiffs' offices and information, and (5) requiring employees with access to such information to execute non-disclosure, non-solicitation, and/or non-competition agreements.

36.    IriSys, Inc. ("IriSys") is a pharmaceutical manufacturer which agreed to supply Concordia with its requirements of Donnatal® Elixir products pursuant to that certain Manufacturing Supply Agreement dated May 14, 2014 (the "Manufacturing Supply Agreement"). In the Manufacturing Supply Agreement, IriSys acknowledged that it would be the recipient of confidential information from Plaintiffs. IriSys agreed to hold such confidential information in strict confidence and take all reasonable precautions to prevent unauthorized

disclosure thereof.

## DEFENDANT'S UNLAWFUL CONDUCT

37.    Upon information and belief, Defendant Lazarus is a Barbados-based labeler and/or vendor of "generic" drug products, which was incorporated in Barbados on July 13, 2017.

38.    Upon information and belief, Defendant Cameron is a Kentucky-based manufacturer and/or vendor of "generic" drug products, which was incorporated in Kentucky on June 2, 2014.

39.    Upon information and belief, Defendants are seeking to exploit the reputation and success of Donnatal® Elixir by marketing and selling an unauthorized "generic" version of Donnatal® Elixir. Defendants are marketing their PBA elixir as a generic substitute for the brand drug Donnatal® Elixir to potential purchasers.

40.    Upon information and belief, on or around April 2018, Defendants obtained National Drug Code ("NDC") numbers for two PBA elixir products. Attached as Exhibit 2 is a copy of Defendants' listing in the National Drug Code Directory.

41.    Upon information and belief, in early 2018, listings for Defendants' PBA elixir products appeared on the FDA website, DailyMed, with a marketing start date of April 20, 2018. Attached as Exhibit 3 is a copy of Defendants' product insert for its PBA elixir products taken from the DailyMed website.

42.    Copies of Defendants' labels and package inserts for its product were also available on the DailyMed website.

43.    Plaintiffs recently learned that Defendants have listed a PBA elixir on the drug pricing databases published by First DataBank and MediSpan and linked that PBA elixir to

Plaintiffs' Donnatal® Elixir with a marketing start date on or around April 20, 2018. A copy of the Medi-Span listing for Defendants' PBA elixir is attached as Exhibit 4.

44.     The Drug Databases are subscription-based drug information and interactions compendia used nationwide by health care professionals, insurers, payers and pharmaceutical manufacturers and others to evaluate medications that are currently on the market.

45.     The Drug Databases are also used to determine whether generic substitutes are available for brand name products.

46.     Upon information and belief, Defendants' PBA elixir products also appear or will soon appear in drug formularies and pharmaceutical dispensing software of pharmacies.

47.     Upon information and belief, pharmaceutical products that are labeled as pharmaceutically equivalent are "linked" to one another in the Drug Databases.

48.     Pharmaceutical equivalence means that the products contain the same active ingredients, in the same amounts, and in the same dosage forms.

49.     According to their labels and package inserts, Defendants PBA elixir products contain the same active ingredients, in the same amount, and in the same dosage form as Donnatal® Elixir products.

50.     Upon information and belief, the labels and package inserts for Defendants' PBA elixir products have been copied from the labels and package inserts for Donnatal® Elixir.

51.     Based upon the representations on the products' labels and package inserts, Defendants' PBA elixir products have become "linked" to Donnatal® Elixir in the Drug Databases.

52.     The "linking" of products within the Drug Databases is used by pharmacies, pharmacists, wholesalers, pharmaceutical buyers, and insurance companies and others to

determine whether there are any generic alternatives available for a particular brand product.

53.    Based upon the listing and linking of the products in the Drug Databases, these relevant market players believe that the linked pharmaceutical products are FDA-approved generic equivalents that are A-rated, or demonstrated to be therapeutically equivalent, and substitutable for the brand name product.

54.    Upon information and belief, Defendants have not established therapeutic equivalence between their PBA elixir products and Donnatal® Elixir with the FDA.

55.    Defendants advertising and promotion of their PBA elixir products as generic to Donnatal® Elixir has falsely or misleadingly deceived the pharmaceutical supply chain to believe that therapeutic equivalence has been demonstrated between Donnatal® Elixir and Defendants' PBA elixir products.

56.    These relevant market players, including wholesalers, distributors, pharmacies, pharmacists, insurers and others, are being deceived into believing that Defendants' PBA elixir products are generic drugs demonstrated to be therapeutically equivalent to Donnatal® Elixir, and/or FDA-approved drugs and that they are therapeutically equivalent and/or A-rated "generics", that are substitutable for Donnatal® Elixir.

57.    Notwithstanding Defendants' advertising and promotion efforts, Defendants' PBA elixir products have not been demonstrated to be therapeutically equivalent and/or are not FDA-approved A-rated "generics" to Donnatal® Elixir, and thus are not substitutable for Donnatal® Elixir.

58.    In addition, by listing their PBA elixir products on the Drug Databases after September 19, 2011, when the FDA unequivocally made approval for new products entering the market mandatory, Defendants are misleading consumers that their products have been

approved by the FDA.

59.    Defendants' listings of their PBA elixir products with the Drug Databases and DailyMed have been made available to Plaintiffs' customers in this District and have impacted and/or will adversely impact Plaintiffs' sales of their Donnatal® Elixir products in this District.

60.    Upon information and belief, Defendants did not perform any tests to determine whether their PBA elixir products were bioequivalent or therapeutically equivalent to Donnatal® Elixir.

61.    The false or misleading information on Defendants' PBA elixir products labels and product inserts and the listings of Defendants' PBA elixir products with the Drug Databases and FDA through its DailyMed website have been transmitted throughout the pharmaceutical supply chain and to Plaintiffs' customers throughout the United States.

62.    Plaintiffs will suffer an immediate and further substantial loss in market share as a direct result of the unauthorized entry of Defendants' PBA elixir products onto the market and Defendants' false or misleading, or false and misleading, representations regarding their PBA elixir products.

63.    Wholesalers and pharmacies have and/or will likely reduce inventories of Donnatal® Elixir as a result of the marketing or availability of Defendants' PBA elixir products.

64.    Believing Defendants' PBA elixir products to be demonstrated as therapeutically equivalent and/or FDA-approved as an A-rated generic alternative that is substitutable for Donnatal® Elixir, pharmacists are or and will continue to automatically substitute Defendants' PBA elixir products for Donnatal® Elixir when they receive a prescription for Donnatal® Elixir.

65.     Defendants do not have a conditional approval, approved NDA, or ANDA for their PBA elixir products, nor are they participants in the FDA's DESI review process for PBA products.

66.     As a result, patients will be exposed to a drug that has not been reviewed or safety-approved by the FDA.

67.     Defendants' promotion, marketing and listing of their PBA elixir products as a generic alternative to and substitutable for Donnatal® Elixir products, and their drug labels and product inserts, are false or misleading, or false and misleading, and have caused and/or will cause irreparable injury to Plaintiffs and will continue to both damage Plaintiffs and to deceive and potentially harm the public unless enjoined by this Court.

68.     Plaintiffs have been and will be harmed by Defendants' false or misleading, or false and misleading, representations. Defendants' efforts have and will continue to mislead consumers into believing that their PBA elixir products are FDA-approved as "generic" to Donnatal® Elixir, or products demonstrated to be therapeutically equivalent to Donnatal® Elixir, which may be automatically substituted for Donnatal® Elixir.

69.     Defendants' efforts have harmed and will continue to harm Plaintiff's extensive goodwill and unique brand, as purchasers of PBA pharmaceuticals have come to recognize Plaintiffs as the only entity currently allowed to market PBA pharmaceuticals.

70.     Upon information and belief, Defendants are aware or should reasonably be aware of the contractual relationships that Plaintiffs maintain with pharmaceutical manufacturers, distributors and/or suppliers in order to make and sell Donnatal® Elixir, and the economic benefits to Plaintiffs that flow from these relationships.

71.     Representatives of First DataBank informed Plaintiffs that the person who

submitted the Lazarus listing for Defendants' elixir was named Blake Kelley and had previously worked at Concordia.

72.     Blake Kelley is currently named as a defendant in a pending litigation filed by Concordia and Concordia US in the District of South Carolina, which alleges claims against Kelley for his conduct in violation of employment and separation agreements executed between Kelley and Concordia, among other claims. *See CONCORDIA PHARMACEUTICALS INC., and CONCORDIA PHARMACEUTICALS (US) INC., v. CHRISTOPHER BLAKE KELLEY*, Docket No. 6:18-cv-00704-HMH filed March 14, 2018. Plaintiffs incorporate by reference the allegations contained in their Second Amended Complaint against Kelley herein.

73.     Upon information and belief, Lazarus has conspired or otherwise combined with Kelley, Cameron, Mark Thompson, the former founder and Chief Executive Officer of Concordia International, which is the parent company of the other Plaintiffs, and possibly others to manufacture and market their PBA elixir products through linking to Plaintiffs' Donnatal® Elixir products in the Drug Databases, using confidential, proprietary, and trade secret information belonging to Concordia.

74.     As former Concordia employees, Kelley and Thompson each had access to Plaintiffs' confidential information and trade secrets through the ordinary course of their employment with the respective Plaintiffs.

75.     Upon information and belief, Lazarus, together with Kelley, Cameron, Thompson, and/or possibly others have used or intend to use Plaintiffs' confidential, proprietary, and trade secret information to manufacture pharmaceuticals that compete with Concordia's products.

76.      Upon information and belief, Defendants have used Plaintiffs' confidential, proprietary, and trade secret information to its competitive advantage, and to Plaintiffs'

detriment.

77.    Kelley and Thompson's conduct are each in violation of their respective employment and separation agreements executed with the respective Plaintiffs. See Exhibits 5-10.

78.    Plaintiffs have also learned that Kelley has been in communications with former employees Boris Gites ("Gites") and Charles Cavallino ("Cavallino") of IriSys., an authorized manufacturer of Plaintiffs' Donnatal® Elixir products, about production of an "elixir" product.

79.    Upon information and belief, during their employment with IriSys, Gites and Cavallino oversaw and implemented manufacturing processes, analytics, and methods developed by IriSys for various pharmaceuticals, including those produced for Concordia. Upon information and belief, Gites and Cavallino had access to and/or received Plaintiffs' confidential, proprietary, and trade secret information.

80.    Upon information and belief, beginning no later than October 2017, Gites began copying thousands of confidential and proprietary documents, including information relating to Plaintiffs, from IriSys' server.

81.    Upon information and belief, IriSys has filed an action against Gites for his conduct in the California Superior Court. *See IRISYS LLC vs. GITES*, Docket No. 2018-00008670 (Cal. Super. Ct. Feb. 20, 2018).

82.    On July 10, 2017, Kelley inadvertently forwarded a chain email from his personal email address to his previous email address with one of the Plaintiffs.  In the email, Kelley discussed packaging configurations for "16oz and 4oz bottles" of some product with Cavallino, the former head of manufacturing at IriSys.  Kelley wrote, in part, "I spoke with our Concordia contact and he said they packed the 16oz. in cases of 6 due to the high cost of the product and

the reluctance of the wholesalers to order an entire case.  That being the case, if we decide to revert to 6-16 oz. bottles per case, would it be feasible to double your numbers to get close?"

83.    During the end of September and beginning of October 2017, Kelley emailed Gites and Cavallino about the labeling for a product. Kelley received a document titled "Generic Label – Elixir 4 oz." Later in the same email chain, the product was listed as having a "Grape Flavor."

84.    The Donnatal® Elixir is sold in 4 ounce and 16 ounce bottles and grape flavor, among other sizes and flavors. Donnatal® Elixir is one of Plaintiffs' most valuable products and trade secrets in the United States.

85.    Upon information and belief, Kelley together with Gites, Cavallino, Thompson and/or possibly others have used and/or intend to use Plaintiffs' confidential, proprietary, and trade secret information to manufacture PBA elixir products marketed by Defendants Lazarus and/or Cameron to compete with Concordia's Donnatal® Elixir products to the competitive advantage of Defendants, and to Plaintiffs' detriment.

## FIRST CLAIM FOR RELIEF
### (False Advertising in Violation of Lanham Act Section 43(a); 15 U.S.C. § 1125(a))

86.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint, and incorporate them herein by reference.

87.    Defendants' commercial advertising and promotion of their PBA elixir products throughout the pharmaceutical supply chain as generic to Donnatal® Elixir constitutes false or misleading, or false and misleading, descriptions or representations of fact that Defendants' PBA elixir products are demonstrated to be therapeutically equivalent and/or FDA-approved "generic" products that are A-rated to and/or automatically substitutable for Donnatal® Elixir.

88.    Defendants' statements have actually deceived or have the tendency to deceive a

substantial segment of their audience as to the nature, quality, and characteristics of their PBA elixir products.

89.    Defendants' false or misleading, or false and misleading, claims about their PBA elixir products are material and likely have influenced and likely will continue to influence the purchasing decisions of wholesalers, third-party payors, pharmacists, health care professionals, insurers, prescribers, and others in the pharmaceutical industry, as well as patients or caregivers of patients who consume Plaintiffs' products.

90.    Defendants' false or misleading claims about their PBA elixir products are material and have influenced and likely will continue to influence the placement, reimbursement rate, and tiering of their products and Donnatal® Elixir on insurance formularies.

91.    Defendants' false and misleading representations were and are made in interstate commerce.

92.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and are continuing to suffer irreparable injury, including irreparable injury and damages, which include a loss of sales, profits, and customers, which Plaintiffs would have but for the false or misleading, or false and misleading, representations by Defendants.

93.    Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to preliminary and permanent injunctive relief to Defendants' continuing acts.

94.    Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to recover all damages sustained by Defendants' actions, an accounting for profits realized by Defendants through their false or misleading, or false and misleading, advertising of their PBA elixir products, and the costs of this action.

95.    Defendants' actions have been willful and deliberate, entitling Plaintiffs to recover treble damages and/or profits. In addition, as this is an exceptional case pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to an award of reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF
**(Contributory False Advertising in Violation of Lanham Act Section 43(a); 15 U.S.C. § 1125(a))**

96.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint, and incorporate them herein by reference.

97.    Upon information and belief, Defendants are knowingly inducing or causing, and/or materially participating in, the false or misleading, or false and misleading, advertising and promotion of their PBA elixir products by Drug Databases, pharmacies, formularies, and/or other members of the pharmaceutical industry as FDA-approved "generic" products that are therapeutically equivalent or A-rated to and/or substitutable for Donnatal® Elixir.

98.    Upon information and belief, Defendants knew and/or intended to participate in the false advertising of their PBA elixir products by Drug Databases, pharmacies, insurers, and/or other members of the pharmaceutical industry.

99.    Upon information and belief, Defendants actively and materially furthered such false or misleading, or false and misleading, advertising and promotion of their PBA elixir products by making false or misleading, or false and misleading representations to the Drug Databases to list their PBA elixir products with the Drug Databases, listing their PBA elixir products with the Drug Databases, and/or marketing their PBA elixir products as "generics" that are comparable to and/or substitutable for Donnatal® Elixir.

100.    Such false or misleading, or false and misleading, statements about Defendants' PBA elixir products by Drug Databases, pharmacies, insurers, formularies, and/or other

members of the pharmaceutical industry have actually deceived or have the tendency to deceive a substantial segment of their audience as to the nature, quality, and characteristics of Defendants' PBA elixir products.

101.    Such false or misleading statements about Defendants' PBA elixir products by Drug Databases, pharmacies, formularies and/or other members of the pharmaceutical industry are material and likely to influence the purchasing decisions of wholesalers, third-party payors, pharmacists, health care professionals and others in the pharmaceutical industry, as well as patients who consume Plaintiffs' products.

102.    These false or misleading representations were and are made in interstate commerce.

103.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages, which include a loss of sales, profits and customers, which Plaintiffs would have made but for the false and deceptive representations by Defendants.

104.    Defendants' actions as alleged herein have caused, are causing, and will continue to cause irreparable and inherently unquantifiable injury and harm to Plaintiffs' business, reputation, and goodwill, unless Defendants' unlawful conduct is enjoined by this Court.

105.    Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to preliminary and permanent injunctive relief to Defendants' continuing acts.

106.    Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to recover all damages sustained by Defendants' actions, an accounting for profits realized by Defendants, and the costs of this action.

107.    Defendants' actions have been willful and deliberate, entitling Plaintiffs to recover treble damages and/or profits.  In addition, as this is an exceptional case pursuant to 15

U.S.C. § 1117(a), Plaintiffs are entitled to an award of reasonable attorneys' fees.

## THIRD CLAIM FOR RELIEF
### (Unfair Competition in Violation of Lanham Act Section 43(a); 15 U.S.C. § 1125(a))

108.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint, and incorporates them herein by reference.

109.    Upon information and belief, Defendants' use of false or misleading, or false and misleading, information on their PBA elixir product labels, package inserts, and/or other marketing materials for their products as well as Defendants' representations throughout the pharmaceutical supply chain that its products are generic to Donnatal Elixir have caused and are likely to continue to cause confusion, mistake, and/or deceive prospective or actual customers and other members of the public as to the source, origin, sponsorship or approval of Defendants' products and/or its affiliation, connection, or association with Plaintiff.

110.    As a direct and proximate result of Defendants' conduct, Plaintiffs have and will continue to suffer damages, which includes a loss of customers, sales and profits, which Plaintiffs would have but for the false or misleading, or false and misleading, representations by Defendants.

111.    Defendants' actions as alleged herein have caused, are causing, and will continue to cause irreparable and inherently unquantifiable injury and harm to Plaintiffs' business, reputation, and goodwill, unless Defendants' unlawful conduct is enjoined by this Court.

112.    Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to preliminary and permanent injunctive relief to Defendants' continuing acts.

113.    Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to recover all damages sustained by Defendants' actions, an accounting for profits realized by Defendants, and the costs of this action.

114.    Defendants' actions have been willful and deliberate, entitling Plaintiffs to recover treble damages and/or profits. In addition, as this is an exceptional case pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to an award of reasonable attorneys' fees.

### FOURTH CLAIM FOR RELIEF
### (Common Law Unfair Competition)

115.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint, and incorporates them herein by reference.

116.    Defendants have made false or misleading, or false and misleading, statements to the marketplace, public and actual or potential customers that its products are generic to Donnatal® Elixir with the intent of deceiving and misleading the public as to the quality and nature of their products.

117.    Upon information and belief, Defendants have intentionally misappropriated Plaintiffs' intellectual property including, but not limited to Plaintiffs' know-how in manufacturing PBA elixir products, which Plaintiffs' have invested substantial time, effort, and money in creating and refining, in order to unfairly compete with Plaintiffs.

118.    Upon information and belief, Defendants have intentionally misappropriated Plaintiffs' financial data and customer information, which Plaintiffs have invested substantial time, effort and money in creating, in order to unfairly compete with Plaintiffs.

119.    Upon information and belief, the aforesaid acts have enabled Defendants to misappropriate the labors and expenditures of Plaintiffs in researching and developing its method to manufacture PBA elixir products, and in creating its wealth of financial and customer information for Donnatal® Elixir in the pharmaceutical market.

120.    Upon information and belief, Defendants' have misappropriated Plaintiffs' intellectual property at little or no cost, and Defendants' are benefiting from the

misappropriated intellectual property because they are saved the time and expense of independently developing a formulation and method of manufacturing PBA elixir products, as well as saving Defendants the time and expense of generating financial and customer information independently, which aids Defendants in the marketing of PBA elixir products.

121.    Defendants' have not licensed or compensated Plaintiffs' for any of Plaintiffs' misappropriated intellectual property.

122.    Upon information and belief, Plaintiffs' have suffered damages including the loss of sales by customers who have limited their purchase of Plaintiffs' Donnatal® Elixir in anticipation of Defendants' PBA elixir products, which Plaintiffs would have but for Defendants' conduct.  Additionally, the aforesaid acts are likely to continue to cause injury to Plaintiffs' sales, business reputation, and result in Defendants unfairly competing with Plaintiffs.

123.    The conduct of Defendants' described above is intended to disrupt the economic relationships between Plaintiffs and their customers.

124.    As a proximate result of Defendants' intentional misconduct, Plaintiffs have suffered damages in an amount to be proven at trial.

125.    The conduct of Defendants in interfering with Plaintiffs' economic relationships was intentional, willful and calculated to cause damages to Plaintiffs' lawful business.  The conduct of Defendants was perpetrated with actual malice and ill will toward Plaintiffs, and with the intentional and improper purpose of causing damage.  There was no justifiable cause for Defendants' actions other than to divert revenue, and as a result, an award of punitive damages is warranted.

## FIFTH CLAIM FOR RELIEF
### (Common Law Unjust Enrichment)

126.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint, and incorporates them herein by reference.

127.    Plaintiffs invested a substantial amount of capital to purchase a variety of assets regarding the Donnatal® Elixir products from its predecessor in interest PBM pharmaceuticals, Inc. including regulatory approvals, authorizations, licenses, master drug files, applications, agreements, permits, NDAs, ANDAs, [and] conditionally approved ANDAs.

128.    Additionally, as a result of Plaintiffs hard work and substantial investment, its product formulations, manufacturing processes, customer relationships, strategic analysis, financial data, and property are valuable to it.

129.    Upon information and belief, Plaintiffs are the only parties participating in the pending NOOH and DESI review regarding Donnatal® Elixir and products identical, related, or similar ("IRS") thereto.

130.    Upon information and belief, without such participation by Plaintiffs in showing that their Donnatal® Elixir products are effective in the hearing regarding Donnatal® Elixir, said review of Donnatal® Elixir and products IRS thereto would be closed, and the FDA would withdraw the conditional approval letter for Donnatal® Elixir making the marketing of any PBA elixir product unlawful unless marketed subject to a new drug application.

131.    If Plaintiffs were not participating in the hearing, the Drug Databases would refuse to list any PBA elixir product that is not marketed subject to an NDA of ANDA.

132.    Upon information and belief, Defendants never asked for or received any FDA approval before marketing their PBA elixir products, nor have Defendants timely affirmed a hearing request and submitted clinical evidence before the DESI review and have therefor waived their opportunity for a hearing.

133.    Defendants' wrongful conduct has resulted, and will continue to result, in Defendants being unjustly enriched through their unauthorized taking and use of Plaintiffs' trade secrets and property.

134.    Defendants' unauthorized use and copying of Plaintiffs' Donnatal® Elixir labels; Defendants' listing and linking (to Donnatal®) of their unauthorized PBA elixir products with the Drug Databases and Dailymed; Defendants' misrepresentations that their PBA elixir products are generic to Donnatal® Elixir or are FDA-approved "generics" that are equivalent to and/or substitutable for Plaintiffs' Donnatal® Elixir; and/or the Defendants' marketing, manufacture and sale of their PBA elixir products without license or authorization of Plaintiffs are benefits conferred on and inequitably retained by Defendants.

135.    Defendants' marketing of their PBA elixir without investing any time or money in proving the effectiveness of their PBA elixir products before the pending hearing regarding Donnatal® Elixir and IRS products thereto is a benefit conferred and inequitably retained by Defendants.

136.    Defendants knew of the above-listed benefits because these benefits were the result of Defendants' unauthorized and illegitimate actions.

137.    These benefits were valuable to Defendants and Defendants should have reasonably expected to repay Plaintiffs for these benefits, for at least the reason that any such benefits would have only been conferred on Defendants through a bargained-for license agreement from Plaintiff.

138.    Defendants accepted or retained these benefits without paying Plaintiffs for their value.  Defendants' receipt of the benefits without compensation to Plaintiffs would be unjust.

**SIXTH CLAIM FOR RELIEF**
**(Tortious Interference with Prospective Economic Advantage)**

139.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint, and incorporates them herein by reference.

140.    Defendants' are aware that Plaintiffs are the only entity that the FDA has permitted to market and sell PBA products.

141.    Defendants are aware of Plaintiff's valid contractual and business relationships with manufacturers, wholesalers, distributors and/or suppliers that are maintained in order to make and sell Donnatal® Elixir.

142.    Defendants are aware of the economic benefits that flow to Plaintiffs as a result of these contractual relationships.  Defendants are further aware of the probability that economic benefits would continue to flow to Plaintiffs in the future as a result of these contractual relationships.

143.    Defendants' improper listing and linking of its PBA elixir products to Plaintiffs' Donnatal® Elixir in Drug Databases and pharmacy dispensing software as well as Defendants' additional wrongful and intentional conduct as set forth in this Complaint has interfered with Plaintiffs' valid contractual relationships.

144.    The conduct of Defendants' described above is intended to disrupt the economic relationships between Plaintiffs and their customers.

145.    Upon information and belief, Plaintiffs' customers have limited their purchase of Donnatal® Elixir products in anticipation of Defendants' PBA elixir products.

146.    As a proximate result of Defendants' intentional misconduct, Plaintiffs have suffered damages in an amount to be proven at trial.

147.    The conduct of Defendants in interfering with Plaintiffs' economic relationships was intentional, willful and calculated to cause damages to Plaintiffs' lawful business.  The

conduct of Defendants was perpetrated with actual malice and ill will toward Plaintiffs, and with the intentional and improper purpose of causing damage. There was no justifiable cause for Defendants' action other than to divert revenue, and as a result, an award of punitive damages is warranted.

## SEVENTH CLAIM FOR RELIEF
### (Tortious Interference with Contract – Thompson Agreements)

148.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint, and incorporate them herein by reference.

149.    Concordia International and Thompson executed that certain Executive Employment Agreement dated June 17, 2014 and that certain Separation Agreement and General Release dated November 6, 2016 (together, the "Thompson Agreements").

150.    Upon information and belief, Thompson breached the Thompson Agreements by, *inter alia*, retaining, disclosing and/or using Plaintiffs' confidential, proprietary, and trade secret information and/or combining with Lazarus, Cameron, Kelley, and possibly others to compete against Plaintiffs.

151.    Defendants knowingly, intentionally, unjustifiably, and in bad faith induced Thompson to breach the Thompson Agreements by requesting, encouraging, or otherwise inducing him to disclose or use Plaintiffs' confidential, proprietary, or trade secret information.

152.    As a direct and proximate result of Defendants' misconduct, Plaintiffs' have been damaged in an amount to be proven at trial, but in any event in excess of $75,000.

153.    Upon information and belief, as a result of Thompson's conduct, Plaintiffs have suffered, and continue to suffer substantial and irreparable injury for which there is no adequate remedy at law.

154.    By reason of the foregoing, Plaintiffs are entitled to recover compensatory and

punitive damages against Defendants.

## EIGHTH CLAIM FOR RELIEF
### (Tortious Interference with Contract – Kelley Agreements)

155.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint, and incorporates them herein by reference.

156.    Concordia US and Kelley executed those certain Employment Agreement dated May 17, 2016, Non-Competition Agreement dated June 1, 2016, Non-Disclosure and Developments Agreement dated June 1, 2016, and Separation Agreement and General Release dated January 3, 2017 (together the "Kelley Agreements").

157.    Upon information and belief, Kelley breached the Kelley Agreements by, *inter alia*, retaining, disclosing and/or using Plaintiffs' confidential, proprietary, and trade secret information and/or combining with Defendants, and possibly others to compete against Plaintiffs.

158.    Defendants knowingly, intentionally, unjustifiably, and in bad faith induced Kelley to breach the Kelley Agreements by requesting, encouraging, or otherwise inducing him to disclose or use Plaintiffs' confidential, proprietary, or trade secret information.

159.    As a direct and proximate result of Defendants' misconduct, Plaintiffs have been damaged in an amount to be proven at trial, but in any event in excess of $75,000.

160.    Upon information and belief, as a result of Defendants' conduct, Plaintiffs have suffered, and continue to suffer substantial and irreparable injury for which there is no adequate remedy at law.

161.    By reason of the foregoing, Plaintiffs are entitled to recover compensatory and punitive damages against Defendants.

## NINTH CLAIM FOR RELIEF
### (Misappropriation of Trade Secrets – The Defend Trade Secrets Act of 2016)

162.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint, and incorporate them herein by reference.

163.    Plaintiffs' product formulas, manufacturing processes, financial data, and customer information, as applicable, constitute trade secrets under 18 U.S.C. § 1839(3).

164.    Plaintiffs have taken various steps to protect their trade secrets, including: (1) using network firewalls, password protection, and security credentials to prevent unauthorized access to Plaintiff's servers, (2) limiting employees' access to information to that which is necessary to fulfill their job functions, (3) revoking employee authorization when they leave employment with Plaintiffs, (4) controlling physical access to Plaintiffs' offices and information, and (5) requiring employees with access to such information to execute non-disclosure, non-solicitation, and/or non-competition agreements.

165.    Upon information and belief, Defendants have acquired, disclosed, and/or used certain of Plaintiffs' trade secrets, and are using Plaintiffs' trade secrets to compete against Plaintiffs in the pharmaceutical industry and capitalize on Plaintiffs' investment of time, resources and goodwill.

166.    The information and/or documents Defendants' misappropriated constitute trade secrets under the Defend Trade Secrets Act of 2016 ("DTSA") because they derived independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and because Plaintiffs took reasonable and practical measures to maintain the secrecy and confidentiality of its trade secrets and confidential information.

167.    Upon information and belief, Defendants knew or should have known that the

trade secrets were acquired by improper means.

168.    Plaintiffs did not expressly or impliedly consent to Defendants' acquisition, disclosure, or use of their trade secrets.

169.    Upon information and belief, Defendants have misappropriated Plaintiffs' trade secrets.

170.    Upon information and belief, Defendants' misappropriation of Plaintiffs' trade secrets was willful and malicious.

171.    Upon information and belief, Defendants' misappropriation of Plaintiffs' trade secrets is causing and will continue to cause Plaintiffs to suffer irreparable harm, for which they have no adequate remedy at law, and has damaged Plaintiffs in an amount to be determined at trial, but in any event, in excess of $75,000.

172.    By reason of the foregoing, Plaintiffs are entitled to injunctive relief, actual damages, damages for unjust enrichment, a reasonable royalty, exemplary damages, and reasonable attorneys' fees.

## TENTH CLAIM FOR RELIEF
### (Misappropriation of Trade Secrets – South Carolina Trade Secrets Act)

173.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint, and incorporates them herein by reference.

174.    Plaintiffs' product formulas, manufacturing processes, financial data, and customer information, as applicable, constitute trade secrets under S.C. Code 39-8-10(5).

175.    Plaintiffs have taken various steps to protect their trade secrets, including: (1) using network firewalls, password protection, and security credentials to prevent unauthorized access to Plaintiffs' servers, (2) limiting employees' access to information to that which is necessary to fulfill their job functions, (3) revoking employee authorization when they leave

employment with Plaintiffs, (4) controlling physical access to Plaintiffs' offices and information, and (5) requiring employees with access to such information to execute non-disclosure, non-solicitation, and/or non-competition agreements.

176. Upon information and belief, Defendants have acquired, disclosed, and/or used certain of Plaintiffs' trade secrets.

177. Upon information and belief, Defendants knew or should have known that the trade secrets were acquired by improper means.

178. Plaintiffs did not expressly or impliedly consent to Defendants' acquisition, disclosure, or use of their trade secrets.

179. Upon information and belief, Defendants have misappropriated Plaintiffs' trade secrets.

180. Upon information and belief, Defendants' misappropriation of Plaintiffs' trade secrets was willful, wanton, or in reckless disregard of Plaintiffs' rights.

181. Upon information and belief, Defendants' misappropriation of Plaintiffs' trade secrets is causing and will continue to cause Plaintiffs to suffer irreparable harm, for which they have no adequate remedy at law, and has damaged Plaintiffs in an amount to be determined at trial, but in any event, in excess of $75,000.

182. By reason of the foregoing, Plaintiffs are entitled to injunctive relief, actual damages, damages for unjust enrichment, a reasonable royalty, exemplary damages, and their reasonable attorneys' fees.

## ELEVENTH CLAIM FOR RELIEF
**(South Carolina Unfair Trade Practice Act; S.C. Code Ann. § 39-5-10,** *et seq.***)**

183. Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint, and incorporates them herein by reference.

184.    Upon information and belief, Kelley and/or Thompson, acting with and/or on behalf of Defendants', and potentially others, committed an unfair or deceptive act or practice by acquiring, disclosing, or using Plaintiffs' confidential, proprietary, or trade secret information in violation of their respective agreements and applicable law.

185.    Kelley's and/or Thompson's conduct has had a direct and specific adverse impact on the public interest. Specifically, upon information and belief, Kelley and/or Thompson have deceptively combined with Gites, Cavallino, and possibly others to compete against Plaintiffs, and/or worked with Defendants Lazarus and/or Cameron to sell a purportedly pharmaceutically equivalent product that competes against Plaintiffs' Donnatal® Elixir products.  Defendants' conduct is a violation not only of the Thompson Agreements and Kelley Agreements, but of the statutory protections for Plaintiffs' trade secrets. Defendants' conduct violates the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, et seq., because Defendants' conduct includes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

186.    Additionally, Defendants' marketing of products developed through the unlawful use of Plaintiffs' confidential, proprietary, and trade secret information are deceptive to the public and have the potential for repetition. *See Milliken & Co. v. Weiner, No*. 7:14-4422-BHH, 2015 U.S. Dist. LEXIS 124054 (D.S.C. Sept. 17, 2015).

187.    Defendants' conduct was in or affecting commerce.

188.    Defendants' conduct has had an adverse impact on the public interest.

189.    Defendants knew or should have known that their conduct was a violation of the South Carolina Unfair Trade Practices Act, and therefore they willfully and knowingly violated the South Carolina Unfair Trade Practices Act and continue to do so.

190.    Defendants' unfair or deceptive act or practice proximately caused damage to Plaintiffs in an amount to be determined at trial, but in any event, in excess of $75,000.

191.    By reason of the foregoing, Plaintiffs are entitled to recover from Defendants compensatory damages, their reasonable attorneys' fees, and, at their election, treble or punitive damages.

**TWELFTH CLAIM FOR RELIEF**
**(Civil Conspiracy)**

192.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint, and incorporate them herein by reference.

193.    Upon information and belief, Defendants, Kelley, Thompson, and potentially others, joined together for the purpose of injuring Plaintiffs.

194.    Upon information and belief, Defendants' civil conspiracy with others proximately caused actual and special damage to Plaintiffs, including loss of goodwill and incurring attorneys' fees.

195.    By reason of the foregoing, Plaintiffs are entitled to recover from Defendants compensatory damages, special damages, and/or punitive damages.  Plaintiffs' special damages include, *inter alia*, attorneys' fees and loss of goodwill.

**THIRTEENTH CLAIM FOR RELIEF**
**(Conversion)**

196.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint, and incorporate them herein by reference.

197.    Plaintiffs have an ownership interest in and are entitled to possession of all documents and materials, in whatever form, related to its business, and has an ownership interest in its trade secrets and confidential information as described hereinabove.

198.    Upon information and belief, Defendants copied and/or wrongfully obtained electronic files, data and documents without the authorization of Plaintiffs, including without limitation, documents containing or reflecting Plaintiffs' confidential information and Defendants have been unjustly enriched by virtue of their use of same.

199.    The above acts of Defendants constitute a conversion of these electronic files, data, documents, and tangible materials.

200.    Plaintiffs have suffered actual damages as a direct and proximate result of this conversion.

201.    Plaintiffs are entitled to judgment against Defendants for the amount of their actual, general, compensatory, incidental, special, and consequential damages relating to such conversion.

202.    Defendants' actions were reckless, willful, and wanton and Plaintiffs are further entitled to judgment against Defendants for punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that:

A.    the Court award Plaintiffs compensatory damages against Defendants in an amount to be determined at trial, but in any event, more than $75,000;

B.    the Court award Plaintiffs exemplary and/or punitive damages for Defendants' willful, malicious, wanton, or reckless conduct;

C.    the Court enter a preliminary and permanent injunction permanently enjoining Defendants and all others acting in privity or in concert with them from listing, marketing, or offering unauthorized PBA products;

D.    the Court award Plaintiffs their reasonable attorneys' fees incurred in bringing

this action to the full extent permitted by law;

E.      the Court enter an order disgorging Defendants' profits from its unlawful acts and accounting of such profit;

F.      Plaintiffs have a trial by jury on all claims trial-able to a jury by law;

G.      the Court tax the cost of this action against Defendants;

H.      the Court enter an injunction to prevent the actual and threatened continuing misappropriation of Plaintiffs' trade secrets;

I.      the Court enter an order requiring Defendants to take immediate steps to protect and preserve Plaintiffs' trade secrets;

J.      the Court award Plaintiffs a judgment for damages equal to Plaintiffs' actual loss caused by Defendants' misappropriations and/or judgment for damages in the amount Defendants have been unjustly enriched by their misappropriations; and

K.      the Court grant such other and further relief to Plaintiffs as the Court deems just and proper.

Respectfully submitted,

*[signatures on next page]*

**WESLEY D. FEW, LLC**

/s/ Wesley Few
Wesley D. Few, S.C. Fed. Id. No 07371
P.O. Box 9398
Greenville, SC 29604
Tel: (864) 527-5906 | wes@wesleyfew.com

*-and-*

**BUCHANAN INGERSOLL & ROONEY PC**

S. Lloyd Smith (VA Bar No. 85119)
James Wilcox  (VA Bar No. 85337)
1737 King Street, Suite 500
Alexandria, Virginia 22314
Tel: (703) 836-6620
Email: Lloyd.smith@bipc.com
Email: james.wilcox@bipc.com

Tory Ian Summey (N.C. Bar No. 46437)
227 West Trade Street, Suite 600
Charlotte, NC 28202
Tel: (704) 444-3317
Email: Tory.summey@bipc.com

(to be admitted *pro hac vice*)

*COUNSEL FOR PLAINTIFFS CONCORDIA*
*PHARMACEUTICALS INC. S.À.R.L.,*
*CONCORDIA INTERNATIONAL CORP., AND*
*CONCORDIA PHARMACEUTICALS (US) INC.*

June 16, 2018
Greenville, South Carolina

## TABLE OF EXHIBITS

Ex. 1   FDA Elixir Conditional Approval letter, Dec. 30, 1980
Ex. 2   National Drug Code Directory Listing for Lazarus, June 14, 2018
Ex. 3   DailyMed listing for Lazarus, April 2018
Ex. 4   Cameron's Medi-Span listing for elixir, April 26, 2018
Ex. 5   Concordia Employment Offer to Blake Kelley, May 17, 2016
Ex. 6   Blake Kelley Non-Compete Agreement, June 1, 2016
Ex. 7   Blake Kelley Nondisclosure Agreement, June 1, 2016
Ex. 8   Blake Kelley Separation Agreement and General Release, January 3, 2017
Ex. 9   Mark Thompson Employment Agreement, June 17, 2014
Ex. 10  Mark Thompson Separation Agreement Fully Executed, Nov. 8, 2016