IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Concordia Pharmaceuticals Inc., S.A.R.L., Concordia International Corp., and Concordia Pharmaceuticals (US) Inc., | ) ) ) ) | C.A. No. 6:18-1658-HMH |
| Plaintiffs, | ) ) | **OPINION & ORDER** |
| vs. | ) ) | |
| Lazarus Pharmaceuticals, Inc., and Cameron Pharmaceuticals LLC, | ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on the motions to dismiss pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure and S.C. Code Ann. § 15-5-150 filed by Lazarus Pharmaceuticals, Inc. and Cameron Pharmaceuticals, LLC. After a thorough review, the court grants Cameron Pharmaceuticals, LLC's motion to dismiss and grants in part and denies in part Lazarus Pharmaceuticals, Inc.'s motion to dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of Lazarus Pharmaceuticals, Inc. ("Lazarus") and Cameron Pharmaceuticals, LLC's ("Cameron") (collectively "Defendants") manufacturing and selling of a pharmaceutical phenobarbital and belladonna alkaloids ("PBA") elixir product used for the treatment of irritable bowel syndrome. (Compl. ¶¶ 1, 16, ECF No. 1.) Concordia Pharmaceuticals Inc., S.A.R.L., Concordia International Corp., and Concordia Pharmaceuticals (US) Inc. (collectively "Concordia" or "Plaintiffs") distribute and market Donnatal pharmaceutical products, which also contain PBA, to treat irritable bowel syndrome. (Id.

1

¶¶ 16-17, ECF No. 1.) Concordia alleges that Defendants are "seeking to exploit the success of Donnatal Elixir by manufacturing and marketing a 'knock-off' PBA elixir while aided by intellectual property wrongfully obtained from Plaintiffs." (Id. ¶ 18, ECF No. 1.) Concordia claims that Defendants "falsely represent that their PBA elixir is available and functions as a generic substitute for Donnatal Elixir." (Id., ECF No. 1.) In the complaint, Plaintiffs allege the following causes of action: (1) false advertising in violation of Lanham Act Section 43(a) and 15 U.S.C. § 1125(a); (2) contributory false advertising in violation of Lanham Act Section 43(a) and 15 U.S.C. § 1125(a); (3) unfair competition in violation of Lanham Act Section 43(a) and 15 U.S.C. § 1125(a); (4) common law unfair competition; (5) common law unjust enrichment; (6) tortious interference with prospective economic advantage; (7) tortious interference with contract; (8) misappropriation of trade secrets pursuant to the Defend Trade Secrets Act of 2016; (9) misappropriation of trade secrets pursuant to the South Carolina Trade Secrets Act; (10) violation of the South Carolina Unfair Trade Practices Act; (11) civil conspiracy; and (12) conversion. (Id. ¶¶ 86-202, ECF No. 1.)

Lazarus submits that it is necessary to list a new pharmaceutical product on drug databases to bring that product to market. (Lazarus Mot. Dismiss Ex. 2 (Thompson Aff. ¶ 17), ECF No. 27-2.) Christopher Blake Kelley ("Kelley") is a South Carolina resident who was previously employed by Concordia as a Sales Director. (Id. Ex. 2 (Thompson Aff. ¶ 20), ECF No. 27-2.) Lazarus submits that Kelley was able to provide a United States address and agreed to list Lazarus' product on the MediSpan and First Databank databases in April 2018. (Id. Ex. 2 (Thompson Aff. ¶¶ 18-20), ECF No. 27-2.) After Lazarus' information was submitted, the databases linked their product with Concordia's Donnatal Elixir. (Mem. Supp. Lazarus Mot.

2

Dismiss 5, ECF No. 27-1.) Concordia claims that the linking from the MediSpan and First Databank databases creates the perception that Lazarus' product is an FDA-approved generic equivalent to Concordia's Donnatal Elixir. (Compl. ¶ 53, ECF No. 1.)

Plaintiffs filed the complaint on June 16, 2018. (Id., generally, ECF No. 1.) Lazarus filed a motion to dismiss the complaint on July 17, 2018. (Lazarus Mot. Dismiss, ECF No. 27.) Cameron filed a motion to dismiss on July 31, 2018. (Cameron Mot. Dismiss, ECF No. 30.) Plaintiffs filed a response in opposition to Lazarus' motion to dismiss on July 31, 2018. (Resp. Opp'n Lazarus Mot. Dismiss, ECF No. 36.) Plaintiffs filed a response in opposition to Cameron's motion to dismiss on August 2, 2018. (Resp. Opp'n Cameron Mot. Dismiss, ECF No. 39.) Lazarus filed a reply on August 10, 2018. (Lazarus Reply, ECF No. 42.) Cameron filed a reply on August 12, 2018. (Cameron Reply, ECF No. 43.) This matter is now ripe for consideration.

## II. Discussion of the Law

### A. Motions to Dismiss

#### 1. Personal Jurisdiction

Defendants allege that they should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure because the court lacks personal jurisdiction over them. "When a court's personal jurisdiction over a defendant is contested, the burden is on the plaintiff to establish the existence of a ground for exercising such jurisdiction." ESAB Grp., Inc. v. Centricut, LLC, 34 F. Supp. 2d 323, 328 (D.S.C. 1999). In the absence of an evidentiary hearing, the plaintiff must establish a prima facie showing of jurisdiction. Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). The court may consider evidence outside of the

pleadings, such as affidavits and other evidentiary materials, in ruling on a motion to dismiss for lack of personal jurisdiction. Magic Toyota, Inc. v. Se. Toyota Distribs., Inc., 784 F. Supp. 306, 310 (D.S.C. 1992). The court, moreover, "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan Labs., 2 F.3d at 60.

To assert personal jurisdiction over a foreign corporation, the exercise of jurisdiction must be "authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009). To assert personal jurisdiction over a non-resident defendant, the exercise of jurisdiction must be authorized by South Carolina's long-arm statute and must comport with the Due Process Clause of the Fourteenth Amendment. Young v. F.D.I.C., 103 F.3d 1180, 1191 (4th Cir. 1997). The Supreme Court of South Carolina has interpreted South Carolina's long-arm statute to extend to the constitutional limits imposed by federal due process. Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002). "Consequently, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997) (internal quotation marks omitted).

Under the constitutional analysis, a court has personal jurisdiction over those persons with "sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Consulting Eng'rs Corp., 561 F.3d at 277 (internal quotation marks omitted). Personal jurisdiction can be either general or specific, depending upon the degree of defendant's contacts with the forum state. General personal jurisdiction exists when a defendant's contacts with the forum state are

"continuous and systematic," thereby permitting the exercise of jurisdiction for actions unrelated to defendant's contacts with the state. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9 (1984). A defendant is subject to specific personal jurisdiction when the suit arises out of or is related to the defendant's contacts with the forum. Id. at 414 & n.8.

In determining whether the due process requirements for specific personal jurisdiction exist, the court must consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002) (internal quotation marks omitted).

Lazarus is a Barbados corporation, which was incorporated under the laws of Barbados on July 17, 2017. (Lazarus Mot. Dismiss Ex. 2 (Thompson Aff. ¶¶ 5-6), ECF No. 27-2.) Plaintiffs argue that this court has personal jurisdiction pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure. (Resp. Opp'n Lazarus Mot. Dismiss 1, ECF No. 36.) "Rule 4(k)(2) is in essence a federal long-arm statute." Saudi v. Northrop Grumman Corp., 427 F.3d 271, 275 (4th Cir. 2005). Rule 4(k)(2) states:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2). Thus, Rule 4(k)(2) authorizes personal jurisdiction over a defendant if "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to personal

jurisdiction in the courts of any state, and (3) the exercise of jurisdiction satisfies due process requirements." Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1294 (Fed. Cir. 2012) (citation omitted).

Plaintiffs bring claims under federal law, and Lazarus is a Barbados corporation that is not subject to general jurisdiction in the courts of any state. Further, Lazarus has failed to identify any other state where it is subject to jurisdiction. See id. (Court is entitled to use Rule 4(k)(2) "if the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible . . . ."). Further, drawing all reasonable inferences in favor of the Plaintiffs, this court has specific jurisdiction over Lazarus. See Mylan Labs., 2 F.3d at 60. Lazarus asserts that listing a new pharmaceutical product is difficult without a United States address. (Lazarus Mot. Dismiss Ex. 2 (Thompson Aff. ¶ 19), ECF No. 27-2.) Therefore, Lazarus used Kelley's South Carolina address and provided him with information to submit to the two drug databases. (Id. Ex. 2 (Thompson Aff. ¶ 20), ECF No. 27-2.) Further, Lazarus provides that "[l]isting a new pharmaceutical product on drug databases is a necessary part of the process of bringing that product to market." (Id. Ex. 2 (Thompson Aff. ¶ 17), ECF No. 27-2.) In addition, Plaintiffs allege that Lazarus has sold its pharmaceutical product to consumers in South Carolina. (Resp. Opp'n Lazarus Mot. Dismiss Ex. 2 (Sales Data), ECF No. 36-2.) Accordingly, the court has personal jurisdiction over Lazarus.

Cameron is incorporated in Kentucky and its facilities are based in Kentucky. (Cameron Mot. Dismiss Ex. 1 (Venters Aff. ¶ 4), ECF No. 30-1.) Plaintiffs argue that

> [t]his court has personal jurisdiction over Cameron because Cameron has listed its PBA elixir for sale in online databases that are used by purchasers of PBA pharmaceuticals in [South Carolina], and, accordingly, Cameron has purposefully

> directed its business activities toward [South Carolina]. In addition, Cameron
> has caused harm to Plaintiffs in [South Carolina]. Through such conduct,
> Cameron has purposefully availed itself of the privileges of conducting business
> in [South Carolina], and, when engaging in such conduct, it was reasonably
> foreseeable that Cameron would be subject to this Court's jurisdiction.

(Compl. ¶ 11, ECF No. 1.) Further, Plaintiffs assert that personal jurisdiction over Cameron is established because Kelley identified "Cameron Pharmaceuticals" as the labeler in the information he submitted to the MediSpan drug database. (Resp. Opp'n Cameron Mot. Dismiss 2, ECF No. 39 & Compl. Ex. 4 (MediSpan listing 2), ECF No. 1-4.) However, "Lazarus Pharmaceuticals, Inc." is identified as the labeler on the FDA website, DailyMed. (Compl. Ex. 3 (DailyMed 7), ECF No. 1-3.)

Cameron contends that it is only a distributor and does not manufacture or advertise the PBA elixir at issue. (Cameron Mot. Dismiss 1, ECF No. 30.) Cameron does not have facilities, offices, own property or have members residing in South Carolina. (Id. Ex. 1 (Venters Aff. ¶¶ 5-6), ECF No. 30-1.) Plaintiffs do not allege that Cameron had any contact with Kelley or directed him to identify Cameron as the labeler. Moreover, Cameron's pharmaceutical sales in South Carolina are de minimus. See ESAB Grp., Inc., 126 F.3d at 624 (finding 26 South Carolina customers constituting "less than one-tenth of one percent of its nationwide sales volume" insufficient to establish personal jurisdiction). "[T]o justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that they amount to a surrogate for presence and thus render the exercise of sovereignty just." Consulting Eng'rs Corp., 561 F.3d at 277-78 (internal quotation marks and citation omitted). The Fourth Circuit has consistently held that "a non-resident defendant may only be subject to personal jurisdiction under the 'stream of commerce theory' if

7

that defendant engaged in some activity purposely directed at the forum state." In re Celotex Corp., 124 F.3d 619, 629 (4th Cir. 1997) (citing Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 945-46 (4th Cir. 1994)).

Plaintiffs provided data that alleges that Cameron's four South Carolina customers constituted less than four percent of its nationwide sales volume from May to June 2018. (Resp. Opp'n Lazarus Mot. Dismiss Ex. 2 (Sales Data), ECF No. 36-2.) Plaintiffs fail to allege Cameron engaged in "activity purposefully directed at" South Carolina. In re Celotex Corp., 124 F.3d at 629 (finding no personal jurisdiction where Plaintiff failed to "allege[] more than the entry of [Defendant's] products into the stream of commerce with the expectation that they would be purchased in" the forum state). Accordingly, the court does not have personal jurisdiction over Cameron. Based on the foregoing, the court denies Lazarus' motion to dismiss for lack of jurisdiction, and grants Cameron's motion to dismiss for lack of jurisdiction.

### 2. S.C. Code Ann. § 15-5-150

Further, Lazarus argues that this action violates South Carolina's "door-closing statute." (Lazarus Mot. Dismiss 1, ECF No. 27.) S.C. Code Ann. § 15-5-150 provides:

> An action against a corporation created by or under the laws of any other state, government or country may be brought in the circuit court . . . [b]y a plaintiff not a resident of this State when the cause of action shall have arisen or the subject of the action shall be situated within this State.

Similar to personal jurisdiction, "determining whether the door-closing statute precludes some of the causes of action . . . depends on a fact-sensitive analysis." Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc., 463 F. Supp. 2d 544, 551 (D.S.C. 2006).

8

Lazarus argues that this action is brought by non-resident Plaintiffs against foreign Defendants upon causes of action that arose outside of South Carolina. (Lazarus Mot. Dismiss 1, ECF No. 27.) Plaintiffs contend that their claims arose "in South Carolina because Lazarus purposefully reached into South Carolina and authorized Kelley to place the false and misleading listing with the drug databases." (Resp. Opp'n Lazarus Mot. Dismiss 17, ECF No. 36.) Similar to the reasons establishing that the court has personal jurisdiction over Lazarus, the court finds that Plaintiffs' claims against Lazarus arose in South Carolina. Lazarus is a Barbados corporation subject to personal jurisdiction pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure. Lazarus communicated with Kelley, a South Carolina resident, who agreed to use his South Carolina address and submit the necessary information to bring Lazarus' pharmaceutical product to market. (Lazarus Mot. Dismiss Ex. 2 (Thompson Aff. ¶¶ 17-20), ECF No. 27-2.) Further, Lazarus has "provided no authority for the proposition that a South Carolina statute may bar a federal court action based upon federal question jurisdiction." See Dooney & Burke, Inc. v. Lee, No. 98-1544, 1998 WL 879708, at *1 (4th Cir. Dec. 17, 1998) (unpublished); Shank v. Eagle Techs., Inc., No. RWT-10-2231, 2013 WL 4442033, at *14-15 (finding that "door closing" statutes are irrelevant when jurisdiction is based on a federal question). Accordingly, Lazarus' motion to dismiss pursuant to S.C. Code Ann. § 15-5-150 must be denied.

### 3. Failure to State a Claim

Lastly, Lazarus argues that Plaintiffs' causes of action under the South Carolina Unfair Trade Practices Act ("SCUTPA") and civil conspiracy claim should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Mem. Supp. Lazarus Mot. Dismiss

9

23-25, ECF No. 27.) Under Federal Rule of Civil Procedure 12(b)(6), "a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." Mylan Lab., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Id.

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted). While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (internal quotation marks omitted). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Lazarus asserts that Plaintiffs fail to state a claim under the SCUTPA because this action is a private dispute that does not affect the public interest. (Mem. Supp. Lazarus Mot. Dismiss 23, ECF No. 27-1.) In order to establish a SCUTPA violation, a plaintiff must demonstrate

> (1) that the defendant has engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest.

Havird Oil Co., Inc. v. Marathon Oil Co., Inc., 149 F.3d 283, 291 (4th Cir. 1998). Plaintiffs argue that the complaint sufficiently alleges "the public impact element because (1) they involve false or misleading representations to the public, or (2) Lazarus' conduct has the potential for repetition given that it continues to market and sell its PBA product." (Resp. Opp'n Lazarus Mot. Dismiss 20, ECF No. 36.)

Viewing the complaint in the light most favorable to the Plaintiffs, the Plaintiffs have sufficiently alleged an adverse impact on the public interest. Plaintiffs allege that the "Defendants' marketing of products developed through the unlawful use of Plaintiffs' confidential, proprietary, and trade secret information are deceptive to the public . . . ." (Compl. 186, ECF No. 1); see Milliken & Co. v. Weiner, No. 7:14-4422-BHH, 2015 WL 5474647, at *2 (D.S.C. Sept. 17, 2015) (unpublished) (finding that public impact element sufficiently alleged for SCUTPA claim "in the purported false advertising . . . and alleged fraudulent misrepresentations" by the defendants). Further, the Plaintiffs have sufficiently pleaded that the alleged acts "have the potential for repetition." (Compl. 186, ECF No. 1.) "South Carolina Courts have made clear that the impact on the public interest can be shown when [sic] 'the acts or practices have the potential for repetition.'" Weiner, 2015 WL 5474647, at *2 (quoting York v. Conway Ford, Inc., 480 S.E.2d 726, 728 (S.C. 1997)). Based on the foregoing, the court denies Lazarus' motion to dismiss Plaintiffs' cause of action under the SCUTPA.

Further, Lazarus argues that Plaintiffs fail to state a cause of action for civil conspiracy because Plaintiffs' complaint fails to allege sufficient facts and special damages. (Mem. Supp. Lazarus Mot. Dismiss 24-25, ECF No. 27-1.) Under South Carolina law, the elements of a cause of action for civil conspiracy are: "(1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) causing plaintiff special damage." Hackworth v. Greywood at Hammett, LLC, 682 S.E.2d 871, 874 (S.C. Ct. App. 2009).

Plaintiffs fail to allege special damages that arose specifically from the conspiracy. "This alone means that [the] civil conspiracy [claim] fails." State Farm Life Ins. Co. v. Murphy, 260 F. Supp. 3d 497, 504 (D.S.C. 2017) (citing Hackworth, 682 S.E.2d at 875). Plaintiffs claim that "Defendants' civil conspiracy with others proximately caused actual and special damage to Plaintiffs, including loss of goodwill and incurring attorneys' fees." (Compl. ¶ 194, ECF No. 1.) Rule 9(g) of the Federal Rules of Civil Procedure states "[i]f an item of special damage is claimed, it must be specifically stated." "Special damages must . . . be specifically alleged in the complaint to avoid surprise to the other party." Hackworth, 682 S.E.2d at 875. Further, Plaintiffs reallege many of the other claims in their complaint and fail to allege sufficient additional facts to support their claim for civil conspiracy. See id. ("In a civil conspiracy claim, one must plead additional acts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim.") Therefore, Plaintiffs fail to sufficiently plead their civil conspiracy claim to survive Lazarus' motion to dismiss. Based on the foregoing, the court grants Lazarus' motion to dismiss Plaintiffs' cause of action for civil conspiracy.

### III. CONCLUSION

In conclusion, the court denies Lazarus' motion to dismiss for lack of jurisdiction and grants Cameron's motion to dismiss for lack of jurisdiction. Further, the court denies Lazarus' motion to dismiss pursuant to S.C. Code Ann. § 15-5-150. In addition, the court denies Lazarus' motion to dismiss Plaintiffs' cause of action under the SCUTPA and grants Lazarus' motion to dismiss Plaintiffs' cause of action for civil conspiracy pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

It is therefore

**ORDERED** that Lazarus' motion to dismiss, docket number 27, is granted in part and denied in part as set out. It is further

**ORDERED** that Cameron's motion to dismiss, docket number 30, is granted.

**IT IS SO ORDERED.**

    s/Henry M. Herlong, Jr.
    Senior United States District Judge

Greenville, South Carolina
August 20, 2018